FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN 27 PM 1:29

LORETTA G. WHYTE
CLERK

| | |
|---|---|
| HUGO MARTIN RECINOS-RECINOS, ) PABLO RECINOS-ALVARADO, and ) ALBERTO ALVARADO ) on behalf of themselves and all ) others similarly situated, ) ) ) Plaintiffs, ) ) v. ) ) EXPRESS FORESTRY, INC., ) RICK THOMAS, and ) SANDY THOMAS ) Defendants. ) ) | **Case No. 05-1355 "I" (3)** **Judge Lance M. Africk** |

**PLAINTIFFS' MOTION FOR**
**CERTIFICATION OF A CLASS ACTION**

In accordance with the provisions of Rule 23 of the Federal Rules of Civil Procedure,

Plaintiffs move this Court for a determination that this action may be maintained as a class action

under subsections (b)(3) with respect to the claims set forth in Count I of the Complaint in this

cause. In support of this motion, Plaintiffs state as follows:

1. This is a suit challenging, inter alia, the failure of Defendants to comply with the

recordkeeping, wage statement and wage payment provisions of the Migrant and Seasonal

Agricultural Worker Protection Act, 29 U.S.C. §§ 1801-1871 (1999) ("AWPA") during the pine

tree planting seasons from 1999 until the date of filing of this action.

Fee
Process
X Dktd
CtRmDep
Doc. No

2. Plaintiffs seek to represent a class consisting of:

> all those individuals admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b), who were employed by the Defendants in any capacity from April 1999 until the date of filing of the present action.

See Plaintiff's Class Action Complaint (hereinafter "Pl.Cmplt.") at ¶ 34.

3. As to the request for injunctive relief related to the requirement that certain class-members leave the deeds to their land with the defendants' agents, Plaintiffs propose a sub-class, represented by Plaintiff Hugo Martin Recinos-Recinos, consisting of:

> All those individuals admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b), who were employed by the Defendants in any capacity from April 1999 until the date of filing of the present action who pledged collateral with the defendants' agents in order to obtain employment with the defendants.

4. Although the exact size of the alleged class is presently unknown, the members of the class are so numerous as to make joinder impracticable. The class is believed to include over 300 individuals. (Pl.Cmplt. at ¶ 2, 35). In addition, the limited size of the class members' claims, their geographic dispersion, their relative indigency, their lack of proficiency in the English language, and their relative unfamiliarity with the American legal system makes joinder of all members infeasible. (Pl.Cmplt. at ¶ 35).

5. Common questions of fact exist with regard to the members of the class. (Pl.Cmplt. at ¶ 36). The common questions of fact include the following:

    a.      Whether Defendants failed to pay the Plaintiffs and other class members their minimum, prevailing and overtime wages promptly when due;

    b.      Whether Defendants violated their working arrangements with Plaintiffs and other class members by failing to furnish the terms and

conditions of employment promised Plaintiffs in their contracts and by federal law;

    c.    Whether Defendants, through their agents, knowingly provided the named Plaintiffs and other class members with false and misleading information about the work and its compensation;

    d.    Whether Defendants failed to appropriately provide Plaintiffs and other class members with required written disclosures of the terms and conditions of work;

    e.    Whether Defendants made, kept and preserved accurate payroll records as required by the AWPA and its implementing regulations, with respect to the labor of Plaintiffs and the other class members;

    f.    Whether Defendants provided, to Plaintiffs and the other members of the class, complete and accurate wage statements required by the AWPA and its implementing regulations on each payday;

6. Common questions of law exist with regard to the members of the class. The common questions of law include the following:

    a.    Whether Defendants' failure to pay Plaintiffs and other class members the minimum, prevailing and overtime wage as required by the H-2B temporary foreign labor program violated the AWPA's wage payment provisions. 29 U.S.C. §1822(a); 29 C.F.R. §500.81;

    b.    Whether Defendants' failure to pay Plaintiffs and other class members the minimum, prevailing and overtime wage as required by the H-2B temporary foreign labor

program violated the AWPA's working arrangement provisions. 29 U.S.C. §1822(c); 29 C.F.R. §500.72;

      c.      Whether Defendants' failure to timely provide Plaintiffs and other class members with the required written disclosures of the terms and conditions of work violated the AWPA's disclosure provisions. 29 U.S.C. §1821(a); 29 U.S.C. §1821(g); 29 C.F.R. §500.78;

      d.      Whether Defendants' policy of providing disclosure forms in Arkansas, rather, than at the time and place of recruitment in Guatemala, is a violation of the AWPA. 29 U.S.C. §1821(a); 29 U.S.C. §1821(g); 29 C.F.R. §500.78;

      e.      Whether Defendants' failure to make, keep and preserve accurate payroll records with respect to the labor of Plaintiffs and the other class members violated the AWPA. 29 U.S.C. §1821(d)(1); 29 C.F.R. §500.80(a);

      f.      Whether the Defendants' failure to provide the Plaintiffs and other class members with complete and accurate wage statements on each payday violated the AWPA. 29 U.S.C. §1821(d)(2); 29 C.F.R. § 500.80(d);

      g.      Whether the requirement that Plaintiff Hugo Martin Recinos-Recinos and other class members sign over collateral in order to obtain employment with the Defendants was void as an agreement purporting to waive or modify the Plaintiffs' rights under the AWPA. 29 U.S.C. §1856;

      h.      Whether Defendants' violations of the AWPA were "intentional" within the meaning of that statute. 29 U.S.C. §1854(c).

7.    The claims of the Plaintiffs are typical of those of the alleged class, i.e., seeking declaratory relief, injunctive relief, and damages with respect to the Defendants' failure to make, keep and preserve payroll records, issue wage statements and pay wages when due with respect to labor performed during the pine tree planting seasons.

8.    The named Plaintiffs will fairly and adequately represent the interests of the class. The Plaintiffs' interests are in no way antagonistic to those of the other class members. All class members will benefit from the relief sought. The Plaintiffs' counsel is experienced in federal court litigation under the AWPA, and will vigorously prosecute this action on behalf of the class.

9.    In similar cases under both the AWPA and its predecessor statute, the Farm Labor Contractor Registration Act, courts have frequently certified classes pursuant to Rule 23(b)(3), including classes involving the type of violations complained of in this action.

10.    The common questions of law and fact presented in this case predominate over any individual questions, as the Plaintiffs and the other class members all seek to remedy common legal grievances, including the systematic failure of the Defendants to properly pay them their wages.

11.    A class action is superior to other methods of adjudicating this controversy. Due to the geographic dispersion of the class members, their lack of proficiency in English, their indigent status, and the relatively small amount of individual recovery, maintenance of individual actions would be unmanageable and almost impossible. Furthermore, there has been no other litigation concerning this controversy commenced by the class members. It is desirable to have this litigation maintained in this forum in which important witnesses and lands planted by the class members are located.

This motion is further supported by the accompanying Memorandum of Law and Exhibits, which are incorporated herein by reference.

Respectfully submitted,

_____
Mary C. Bauer
*Pro Hac Vice*
Virginia Bar Number 31388
Andrew H. Turner
*Pro Hac Vice*
Virginia Bar Number 48853
Immigrant Justice Project
Southern Poverty Law Center
400 Washington Avenue
Montgomery, Alabama 36104
334-956-8200
334-956-8481 (fax)


_____
Hector Linares
Juvenile Justice Project of Louisiana
Louisiana Bar Number 28857
1600 Oretha Castle Haley Blvd.
New Orleans, LA 70113
504-522-5437
504-522-5430 (fax)

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served on the following counsel of record by overnight mail on this __2 4th__ day of __June__ , 2005:

Walter Passmore, Esq.
Christopher Funk, Esq.
The Passmore Law Firm
P.O. Drawer 3187
McAllen, TX 78502-3187
Tel: (956)-668-8750
Fax: (956)-668-1714

Mark N. Mallery
McGlinchey Stafford, PLLC
643 Magazine Street
New Orleans, LA 70130-3477
Tel: (504)-596-2736
Fax: (504)-596-2859

_____
Mary Bauer
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

NEW ORLEANS DIVISION

| | |
|---|---|
| HUGO MARTIN RECINOS-RECINOS, ) <br> PABLO RECINOS-ALVARADO, and ) <br> ALBERTO ALVARADO ) <br> on behalf of themselves and all ) <br> others similarly situated, ) <br> ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> EXPRESS FORESTRY, INC., ) <br> RICK THOMAS, and ) <br> SANDY THOMAS ) <br> Defendants. ) <br> ) | **Case No. 05-1355 "I" (3)** <br> **Judge Lance M. Africk** |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR
DECLARATION OF A CLASS ACTION**

**INTRODUCTION**

This is an action by three migrant farmworkers who were employed in Defendants'

forestry operations at various times since 1999. The workers contend that they were denied

protections due them under the federal Migrant and Seasonal Agricultural Worker Protection Act

("AWPA") during the time they worked for Defendants. 29 U.S.C. §§ 1801-1871 (1999). Since

the filing of this suit, one additional worker has opted into the lawsuit pursuant to 29 U.S.C.

§216.

The alleged violations stem in large part from Defendants' time-keeping and pay

practices. Defendants did not reimburse their employees who traveled from Mexico and Guatemala certain travel, recruitment, and visa processing expenses to the extent that those costs reduced Plaintiffs' wages below the federally mandated minimum wage. See Arriaga v. Florida Pacific Farms, LLC, 305 F.3d 1228 (11th Cir. 2002). In addition, the defendants paid their migrant worker employees solely based upon their production—that is, by the number of trees planted—and did not augment their earnings to ensure that they received the appropriate hourly prevailing wage and overtime pay.

Initial determination of class certification is solely a procedural issue which must not be based on the merits of the case. Plaintiffs' burden is limited to demonstrating that the proposed class satisfies the requirements of Rule 23. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974). In ruling on the motion for class certification, the Court must take the substantive allegations of the complaint as true. Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976). When determining whether to certify a class, the Court should employ a presumption in favor of, and not against, the maintenance of the class action, for it is always subject to modification should later developments during the course of trial so require. Esplin v. Hirschi, 402 F.2d 94, 99 (10th Cir. 1968), cert. denied, 394 U.S. 928 (1969).

## THE PROPOSED CLASS

The Plaintiffs seek class certification under Rule 23(b)(3) with respect to the claims presented in Count I of their Complaint. The proposed class consists of

all those individuals admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b), who were employed by the Defendants in any capacity from April 1999 until the date of filing of the present action.

Plaintiffs also propose a subclass, represented by Hugo Martin Recinos-Recinos,

consisting of:

> all those individuals admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b), who were employed by the Defendants in any capacity from April 1999 until the date of filing of the present action who pledged collateral with the defendants' agents in order to obtain employment with the defendants.

## ARGUMENT

### I. A Definable Class Exists

Although not specifically mentioned in Rule 23, an essential prerequisite of a class action is that there must be a "class." In re A.H. Robins Co., 880 F.2d 709, 728 (4th Cir. 1989); White v. National Football League, 822 F. Supp. 1389, 1402 (D. Minn. 1993); C. Wright, A. Miller and M. Kane, 7A Federal Practice and Procedure §1760 (2d ed. 1986). In keeping with the liberal construction of Rule 23, the class does not have to be so ascertainable that every potential member can be identified at the commencement of the action. Doe v. Charleston Area Med. Ctr., Inc., 529 F.2d 638, 644-45 (4th Cir. 1975); Ashe v. Board of Elections, 124 F.R.D. 45, 47 (E.D.N.Y. 1989). If the outlines of the membership of the class are determinable at the outset of the litigation, a class should be deemed to exist. The class description only need be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member. See C. Wright, A. Miller and M. Kane, 7A Federal Practice and Procedure, §1760.

The proposed class consists of an easily distinguishable group of workers. Utilizing Defendants' payroll records, a roster of class members should be able to be constructed with relative ease. In re Vesta Ins. Group, Inc. Sec. Litigation, 1999 U.S. Dist. LEXIS 22233, at *8 (N.D. Ala. Oct. 25, 1999) (noting that members of the class were ascertainable where their names were "readily available" from the defendant's transfer agent). Thus, the precisely defined class requirement is met.

Haywood v. Barnes, 109 F.R.D. 568, 576 (E.D.N.C. 1986) (class of migrant workers employed by a farmer during a specific time period certified by the court).

## II. Plaintiffs Satisfy All Prerequistes To A Class Action

### A. *Numerosity and Impracticability of Joinder*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Impracticality refers not to the impossibility of joinder, but rather to difficulty or inconvenience. Rodriguez by Rodriguez v. Berrybrook Farms, Inc., 672 F. Supp. 1009, 1013 (W.D. Mich. 1987) (plaintiffs need only demonstrate that it is extremely inconvenient or difficult to join the members of the class); Hively v. Northlake Foods, Inc., 191 F.R.D. 661, 666 (M.D. Fla. 2000) (impracticality does not mean impossibility). Rather, impracticality is dependent upon the circumstances of a particular case. Doe v. Guardian Life Ins. Co. of America, 145 F.R.D. 466, 471 (N.D. Ill. 1992).

No definite standard exists as to what size class satisfies the requirements of Rule 23(a). Hively, 191 F.R.D. at 666; Haywood, 109 F.R.D. at 576. However, the modern trend is to adopt as a rule of thumb that classes normally should contain more than 21 members. If the class has over 40 members, it almost always satisfies the numerosity requirements of Rule 23(a)(1). Cox v. American Cast Iron Co., 784 F.2d 1546, 1553 (11th Cir. 1986); Rodriguez by Rodriguez, 673 F. Supp. at 1013. See also C.Wright, A. Miller and M. Kane, 7A Federal Practice and Procedure § 1762 (2d ed.1986) (classes of less than 26 have frequently been held too small to satisfy the numerosity requirement).

The proposed class unquestionably satisfies the numerosity requirements of Rule 23(a)(1). Over 300 migrant workers are believed to have worked as H-2B workers planting trees and performing other tasks for the Defendants within the applicable time period. (Pl. Cmplt. at ¶ 35).

In evaluating the numerosity requirements, the actual number of class members is not alone dispositive. For this reason, proposed classes of identical sizes have been treated differently, with certification granted in some cases and denied in others. As one scholarly treatise has noted:

> The inconsistency of many of these cases when they are viewed solely from the perspective of the number of class members involved graphically demonstrates that caution should be exercised in relying on a case as a precedent simply because it involves a class of a particular size. A variety of factors, including the nature of the action, the size of the individual claims, and the location of the members of the class . . . may have led to the court's decision under Rule 23(a)(1) in a given case.

Wright, et al., *supra*, § 1762 (footnotes omitted). See also Herbert Newberg & Alba Conte, 1 Newberg on Class Actions § 3.5 (4th Ed. 2002).

A number of additional considerations support class certification in this case. The relatively small size of the unpaid wages at issue makes individual suits economically infeasible. As the Seventh Circuit stated, "[t]o require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action." Swanson v. American Consumer Indus., Inc., 415 F.2d 1326, 1333 (7th Cir. 1969). The Supreme Court voiced similar concerns in one of its principal Rule 23 decisions. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 158 (1974) (economic reality dictates class treatment where individual claims were only worth seventy dollars each). Such concerns are particularly appropriate in instances such as the case at bar, where the class is comprised predominantly of indigent persons. Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161, 1164-65 (7th Cir. 1974).

In addition, the geographic dispersion of class members renders joinder impracticable. The class members are farmworkers who maintain their permanent homes throughout Guatemala and Mexico. (Pl. Cmplt. at ¶ 35). A number of courts have recognized that such geographic dispersion makes joinder of all class members highly difficult, if not impossible. Zeidman v. J. Ray McDermott &

Co., 651 F.2d 1030, 1038 (5th Cir. 1981); Rodriguez by Rodriguez, 672 F. Supp. at 1014 (fact that class consists of migrant workers scattered through a number of states makes joinder impracticable); *Gentry v. C & D Oil Co.*, 102 F.R.D. 490, 493 (W.D. Ark 1984).

Finally, the class members' relative lack of sophistication makes maintenance of individual suits or joinder of all class members impractical. Most class members are monolingual Spanish speakers who lack proficiency in English and are relatively unfamiliar with the American legal system. These circumstances render wholly impracticable the joinder of the class members. See e.g., Leyva v. Buley, 125 F.R.D. 512, 515 (E.D. Wash. 1989) (joinder of class members extremely burdensome because of migrant workers' lack of sophistication and limited knowledge of American legal system); Rodriguez by Rodriguez, 672 F. Supp. at 1014 (lack of sophistication of non-English speaking migrant worker class members contributed to making joinder impracticable).

### B. *Common Questions of Law and Fact*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This requirement is expressed in the disjunctive and is satisfied by either a showing of common questions of law or common questions of fact. Dujanovic v. Mortgage America, Inc., 185 F.R.D. 660, 667 (N.D. Ala. 1999). It is not necessary that all questions of law or fact raised in the litigation be common so long as least one issue is common to all class members. Fuller, 197 F.R.D. at 700; Hively, 191 F.R.D. at 666; Powers v. GEICO, 192 F.R.D. 313, 317 (S.D. Fla. 1998) ("The threshold for commonality is not high.")

Common questions of fact exist with regard to the members of the class. Pl. Cmplt. at ¶ 36. These common questions of fact include the following:

    a.  Whether Defendants failed to pay the Plaintiffs and other class

members prevailing and overtime wages promptly when due, as required by law and their employment contracts;

b.      Whether Defendants violated their working arrangements with Plaintiffs and other class members by failing to furnish the terms and conditions of employment promised Plaintiffs in their contracts and by federal law;

c.      Whether Defendants failed to timely provide Plaintiffs and other class members with legally-required disclosures written in a language in which Plaintiffs and other class members are fluent;

d.      Whether Defendants, through their agents, knowingly provided the named Plaintiffs and other class members with false and misleading information about the work and its compensation;

e.      Whether the Defendants failed to maintain complete and accurate payroll records regarding the Plaintiffs and other class members' work, as required by the AWPA and its implementing regulations;

f.      Whether the Defendants failed to provide the Plaintiffs and other class members with complete and accurate wage statements on each payday as required by the AWPA and its implementing regulations.

Each of these common factual questions will be resolved based upon evidence concerning the Defendants' systemic recordkeeping and payment practices. Because all tree planters were paid through a common payroll system, resolution of these factual questions with regard to the Plaintiffs will also determine the propriety of these practices with regard to the other members of the class.

In addition to these common questions of fact, there are several significant common questions of law applicable to all class members. The common questions of law include the following:

a. Whether the failure of the Defendants to pay the Plaintiffs and other class members the prevailing wage and overtime wage as required by the H-2B temporary foreign labor program violated the AWPA's wage payment provisions. 29 U.S.C. §1822(a); 29 C.F.R. §500.81;

b. Whether the failure of the Defendants to pay the Plaintiffs and other class members the prevailing wage and overtime wage as required by the H-2B temporary foreign labor program violated the AWPA's working arrangement provisions. 29 U.S.C. §1822(c); 29 C.F.R. §500.72;

c. Whether the Defendants' failure to maintain complete and accurate records regarding the work of the Plaintiffs and other class members violated the AWPA; 29 U.S.C. §1821(d)(1); 29 C.F.R. §500.80(a);

d. Whether the Defendants' failure to provide the Plaintiffs and other class members with complete and accurate wage statements on each payday violated the AWPA, 29 U.S.C. §1821(d)(2); 29 C.F.R. § 500.80(d);

e. Whether Defendants' violations of the AWPA were

"intentional", within the meaning of that statute, 29 U.S.C. §

1854(c); and

    f.  Whether Defendants' policy of providing disclosure

forms in Arkansas, rather than at the time and place of recruitment

in Guatemala or Mexico, violated the AWPA, 29 U.S.C. § 1821(a).

Plaintiffs have proposed that a subclass be created for the purpose of requesting

injunctive relief declaring void the requirement that individuals leave collateral with Defendants'

agents as a condition of obtaining employment and requiring return of that collateral.  With

regard to that subclass, there are common questions of law and fact.  Those questions of fact

include the following:

    a) Whether the subclass members were required by defendants' agents to

leave collateral with those agents in order to obtain employment with the

defendants.

The common questions of law include :

    a)  Whether the requirement that subclass members leave collateral with

defendants' agents in order to obtain employment violated the AWPA.

As noted above, this suit stems primarily from the Defendants' failure to reimburse

workers for their travel-related expenses to the United States and their failure to pay them the

prevailing wage and overtime. Allegations of a "policy" or "practice" of treating the entire class

unlawfully--such as are alleged here--satisfy the commonality requirement.  Cox v. American

Cast Iron Pipe Co., 784 F.2d 1546, 1557-58 (11th Cir.), cert. denied, 479 U.S. 883 (1986). In

such cases, "commonality is readily shown because the common question becomes whether the

- 9 -

defendant in fact acted through the illegal policy or procedure." Saur v. Snappy Apple Farms, Inc., 203 F.R.D. 281, 287 (W.D. Mich. 2001). Where such a common course of conduct exists by defendants toward all plaintiffs and class members, commonality is satisfied. Talbott v. GC Services, L.P., 191 F.R.D. 99, 103 (W.D. Va. 2000); Buycks-Robertson v. Citibank, 162 F.R.D. 322, 330 (N.D. Ill. 1995).

In other cases involving migrant workers, commonality has been found in circumstances similar to those present in this action. See, e.g., Leyva, 125 F.R.D. at 515-16 (commonality existed where all class members worked during the same harvest season, the employment and housing conditions were the same and the class members were united in a common interest in determining whether the grower's conduct was actionable); Rodriguez v. Carlson, 166 F.R.D. 465, 472 (E.D. Wash. 1996) (common issues existed as to the adequacy of grower-provided housing); Rodriguez by Rodriguez, 672 F.Supp. at 1015 (common issues of law existed as to whether grower's disclosure, payroll and housing practices violated the AWPA); Haywood, 109 F.R.D. at 577-78 (commonality existed where workers claimed migrant labor housing was substandard and payroll and wage statements were incomplete or inadequate); Aguirre v. Bustos, 89 F.R.D. 645, 648 (D.N.M. 1981) (commonality requirements satisfied where each member of the class "alleges the same statutory violations arising out of the same episode of recruitment and employment.")[1]

### C. Typicality of Plaintiffs' Claims

---

[1] The issue of the whether the Defendants' violations of the law were "intentional" under the Act is likewise common to all of the class members. Under the AWPA, a defendant's violations of the act are "intentional" if they occur as part of the employer's regular business practices. Stewart v. Everett, 804 F.Supp. 1494, 1498 (M.D. Fla. 1992); Osias v. Marc, 700 F.Supp. 842, 844 (D. Md. 1988). Thus, any violations of the Act occurring with regard to the Plaintiffs are "intentional" with regard to the other class members, to the extent these violations resulted from the Defendants' ordinary business practices.

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." The class representative must possess the same interest and suffer the same injury as the class members. Murray, 244 F.3d at 811. The claims of the class representatives are typical if they may reasonably be expected to be raised by members of the proposed class. In re Commercial Tissue Prods., 183 F.R.D. 589, 593 (N.D. Fla. 1998). The claims of the representative parties need to be similar enough to those of the class so that they will adequately represent them. Powers v. Stuart-James Co., 707 F.Supp. 499, 503 (M.D. Fla. 1989) ("The reasoning behind this requirement is that where all interests are sufficiently parallel, all interests will enjoy vigorous and full presentation."); C. Wright, A. Miller and M. Kane, 7A Federal Practice & Procedure, § 1764. As one court has stated, typicality exists when there is a

> nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class. A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. Typicality however does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative differs markedly from that of other members of the class.

Kornberg v. Carnival Cruise Lines, 741 F.2d 1332, 1337 (11th Cir. 1984).[2]

In their class-based claims, Plaintiffs contend that Defendants breached their working arrangement with the workers, provided false and misleading recruiting information, failed to keep and provide accurate wage statements and records, failed to pay wages when due as required by the AWPA; and failed to provide a proper disclosure. (Pl. Cmplt. at ¶ 40-56). The claims of the named

---

[2]In many ways, the commonality and typicality requirements of Rule 23(a) overlap, with both focusing on whether a sufficient nexus exists between the legal claims of the named class representatives and those of the class members to warrant certification. Traditionally, commonality refers to the group characteristics of the class as a whole and typicality refers to the individual characteristics of the named plaintiffs in relation to the class. Prado-Steiman v. Bush, 221 F.3d 1266, 1278-79 (11th Cir. 2000).

plaintiffs in this regard are identical in all relevant respects to those of the class members. See (Affidavit of Hugo Martin Recinos-Recinos, Plaintiffs' Exhibit 1, at ¶ 6,7,10-13). If the named plaintiffs are to succeed on their own claims, they must establish that Defendants violated the AWPA in precisely the same manner as is alleged with regard to the other class members. In order to recover, Plaintiffs will be required to establish the same factual premises and prevail on the same legal theories that will underpin the class members' claims. Since the class-based claims in this case arise from the same conduct and are based on the same legal theory, the typicality requirements of Rule 23(a)(3) have been satisfied. De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232-33 (7th Cir. 1983) (class of migrant workers certified in challenge to employment practices).

### D. *Adequacy of Protection of Class Interests*

Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the interests of the class." Thus, the class representatives' interests should not be antagonistic to those of the class members. Pickett v. Iowa Beef Processors, 209 F.3d 1276, 1280 (11th Cir. 2000) (citing C. Wright, A. Miller and M. Kane 7A Federal Practice & Procedure §1768). A party's claim to representative status is defeated only if the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy. Pickett, 209 F.3d at 1280 (citing H. Newberg and A. Conte, 1 Newberg on Class Actions §3.25).

In this case, the interests of the named plaintiffs are in no way antagonistic to those of the other class members. All of the class members will benefit from the relief sought by receiving damages under the AWPA. The named plaintiffs will not benefit in any way from actions that will

prove harmful to the interests of the class members. Pickett, 209 F.3d at 1280.

Rule 23(a)(4) also requires that the representative parties provide adequate financing and competent counsel in support of the litigation. Fuller, 197 F.R.D. at 700. The Southern Poverty Law Center has sufficient funds and will advance all appropriate costs of this litigation. Plaintiffs and their counsel will vigorously and competently prosecute this action on behalf of the class. See Decl. of Mary Bauer, Attached as Plaintiffs' Exhibit 2.

## IV. Plaintiffs Satisfy the Requirements of Rule 23(b)(3)

In order to have a class certified, the Plaintiffs must not only satisfy Rule 23(a), but must also show that they meet one of the alternative requirements of Rule 23(b). Pickett, 209 F.3d at 1279. The Plaintiffs' claims in Count I meet the requirements for certification under Rule 23(b)(3).[3]

### A. *Common Questions of Fact and Law Predominate*

In order for a class to be certified under 23(b)(3), it is necessary that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." The issues that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those matters which are subject only to individualized proof. Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997). Although efficiency and uniformity of decision are among the objectives underlying Rule 23(b)(3), they do not alone establish predominance. Predominance exists only when resolution of an overarching common issue does not break down into an unmanageable variety of individual legal and factual issues. Id. at 1006.

The class claims in this case predominate over any question affecting the individual members

---

[3]The requirements for certification under Rule 23(b)(3) are less stringent and less severe than those for certification under sections (b)(1) and (b)(2) of the Rule. See H. Newberg and A. Conte, 1 Newberg on Class Actions § 4.20.

of the putative class. In fact, the individual plaintiffs' legal claims are subsumed within the class claims. Plaintiffs seek to remedy common legal grievances relating to Defendants' payroll practices. The overriding legal questions are: whether the systematic failure of the Defendants to pay Plaintiffs and other class members the prevailing wage and overtime wage as required by the H-2B temporary foreign labor program violated the AWPA; whether Defendants' systematic failure to reimburse workers for their travel costs to the U.S., to the extent that it brings workers wages below the federally protected wage violates the AWPA; whether Defendants' system of record keeping and provision violates the AWPA; and whether the employers' practices of paying workers solely based on the number of pine trees planted complies with the requirements of the AWPA. A single adjudication can resolve the issues raised by the class. In addition, the issue of whether the requirement that the subclass members leave collateral with defendants' agents is also a matter which can be resolved by a single adjudication. The central legal question is whether such a requirement violates the AWPA.

### B. *A Class Action is Superior to Other Methods of Adjudication*

For certification under Rule 23(b)(3), the Court must find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In making this determination, courts focus on the four factors enumerated in Rule 23(b)(3): the interest of class members in individually controlling the prosecution of separate actions, the extent and nature of any litigation concerning the controversy already commenced, the desirability of having the litigation of the claims in the particular forum where it has been filed, and the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). Taking into account all four of these factors, a class action is superior to any other method of adjudicating this controversy.

With respect to the first factor, it is extremely unlikely that individual class members have any interest in instituting or controlling their own individual actions. Indeed, most of the class members, for various reasons, would probably be unable to bring their own actions. The class members' maintain their permanent homes abroad. (Pl. Cmplt. at ¶ 35). They lack proficiency in English. Id. They are indigent, and are individually due relatively small recoveries. Id. These factors have been led to findings that class litigation is appropriate in several claims brought by migrant workers. See, e.g., Saur, 203 F.R.D. at 289 ("the interest in individual lawsuits is minimal in that the class mechanism allows class members for a more effective and far reaching remedy than would be available to them on an individual basis"); Rodriguez v. Carlson, 166 F.R.D. at 480; Leyva, 125 F.R.D. at 518; Haywood, 109 F.R.D. at 592.

The second criterion is inapplicable in the context of this case as no other litigation concerning this controversy has been commenced by members of the class. There is no indication of any such suits involving the members of the proposed class against the defendants. Saur, 203 F.R.D. at 289 (in the absence of mention of previous lawsuits, court will assume that no such lawsuits have been filed).

It is desirable to conduct this litigation in this forum. Defendants conducted significant business in this district. One of the plaintiffs worked in this district for the defendants for a substantial period of time. Plaintiffs anticipate that important witnesses to the litigation are located within the district.

With respect to the final factor to be considered, although every class action presents administrative difficulties, the benefits of maintaining this action on a class basis far outweigh any administrative burdens. The principal concern in this regard is the process for determining the

unpaid wages and damages due to each class member. The fact that the amount of damages in back wages due each worker must be determined individually does not preclude a finding of predominance. See H. Newberg and A. Conte 1 Newberg on Class Actions § 4.26; Haywood, 109 F.R.D. at 583 ("[t]he fact that the potential amount of damages might vary individually with the number of violations does not preclude class certification where common questions of law and fact as to liability clearly predominate. This argument has been rejected time and again by the courts in a multitude of factual settings."); Lockwood Motors, Inc. v. General Motors Corp., 162 F.R.D.569, 581-82 (D. Minn. 1995) ("Courts routinely find Rule 23(b)(3)'s predominance requirement satisfied despite the need for individualized damage determinations when the 'fact' of injury is common").

Because the claims of Plaintiffs and other class members are based on a common set of facts, testimony will not be needed from all of the workers. Defendants used the same timekeeping and payment procedures for all tree planters, not just the named Plaintiffs. Recino Aff. at ¶ 6,7, 10-13. The Court can determine the situation of each of the class members under this common timekeeping procedure without taking testimony from each individual worker. Wales v. Jack M. Berry, Inc., 192 F.Supp.2d 1269 (M.D. Fla. 1999) (class action challenging payroll practices of citrus employer); Clarke v. Gardenhour Orchards, Inc., 1987 WL 48234, 108 Lab. Cas. ¶ 35,070 (D. Md. 1987).

Requiring separate prosecutions would likely result in far greater manageability problems, including duplicative discovery procedures, disputes among groups of counsel, repeated adjudication of similar controversies, and excessive costs. Compare Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978) (Rule 23(b)(3) class action was superior means of resolving overtime pay claims where "[n]umerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated.") See also De la

Fuente, 713 F.2d at 233; and Saur, 203 F.R.D. at 289 ("the use of the [class action] mechanism appears likely to achieve economies of time, effort and expense in resolving legal issues of class members.")

## V. Treatment of Similar Class Actions Under the AWPA

On many occasions, courts have certified class actions brought by migrant workers under the AWPA and its predecessor statute, the Farm Labor Contractor Registration Act. See, e.g., Antenor v. D & S Farms, 88 F.3d 925 (11th Cir. 1996); Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301 (9th Cir. 1990) (class consisting of 1,349 workers); De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225 (7th Cir. 1983) (class of approximately 1,500); Alvarez v. Joan of Arc, 658 F.2d 1217 (7th Cir. 1981); Wales v. Jack M. Berry, Inc., 192 F.Supp.2d 1269 (M.D. Fla. 1999) (class of hundreds of citrus workers); Perez-Perez v. Progressive Forestry Servs., Inc., No. 98-1474-KI, 2000 U.S. Dist. LEXIS 414 (D. Ore. Jan. 19, 2000); Medrano v. D'Arrigo Brothers Co. of California, 125 F. Supp. 2d 1163 (N.D. Cal. 2000); Rodriguez v. Carlson, 166 F.R.D. 465 (E.D. Wash. 1996); Leyva v. Buley, 125 F.R.D. 512 (E.D. Wash. 1989); Hardy v. Ross, 113 Lab. Cases (CCH) ¶ 35,284 (D.S.C. 1989); Fields v. Luther, 108 Lab. Cases (CCH) ¶ 35,072 (D. Md. 1988); Rodriguez by Rodriguez v. Berrybrook Farms, Inc, 672 F. Supp. 1009 (W.D. Mich. 1987); Haywood v. Barnes, 109 F.R.D. 568 (E.D.N.C. 1986); Bertrand v. Jorden, 672 F. Supp. 1417, (M.D. Fla.) (class of 200 migrant workers); Aguirre v. Bustos, 89 F.R.D. 645 (D.N.M. 1981); Juarez v. Quintero, 530 F. Supp. 267 (N.D. Cal. 1981); Cantu v. Owatonna Canning Co., Inc., 90 Lab. Cases (CCH) ¶ 33,965 (D. Minn. 1978).

## CONCLUSION

Based on the foregoing authority, the Court should grant the Plaintiffs' Motion for Class

Certification and permit this matter to proceed as a class action under Rule 23(b)(3) with respect to

the claims set forth in Count I of the Complaint.


Respectfully submitted,

HUGO MARTIN RECINOS-RECINOS, et. al.


By: _____
Andrew H. Turner
*Pro Hac Vice* (VSB #48853)
Mary C. Bauer
*Pro Hac Vice* (VSB #31388)
Counsel for Plaintiffs
Immigrant Justice Project
Southern Poverty Law Center
400 Washington Ave.
Montgomery, AL 36104
Tel: (334)-956-8200
FAX: (334)-956-8481


_____
Hector Linares
Louisiana Bar Number 28857
Juvenile Justice Project of Louisiana
1600 Oretha Castle Haley Blvd.
New Orleans, LA 70113
Tel: (504)-522-5437
Fax: (504)-522-5430

## CERTICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was sent by first class mail this 24th day of June 2005:

Walter Passmore, Esq.
Christopher Funk, Esq.
The Passmore Law Firm
P.O. Drawer 3187
McAllen, TX 78502-3187
Tel: (956)-668-8750
Fax: (956)-668-1714

Mark N. Mallery
McGlinchey Stafford, PLLC
643 Magazine Street
New Orleans, LA 70130-3477
Tel: (504)-596-2736
Fax: (504)-596-2859

Mary Bauer
Attorney for Plaintiffs

# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

NEW ORLEANS DIVISION

| | |
|---|---|
| HUGO MARTIN RECINOS-RECINOS, PABLO RECINOS-ALVARADO, and ALBERTO ALVARADO on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> EXPRESS FORESTRY, INC., RICK THOMAS, and SANDY THOMAS <br> Defendants. | Case No. 05-1355 |

## AFFIDAVIT OF HUGO MARTIN RECINOS

1. My name is Hugo Martin Recinos-Recinos. I am one of the Plaintiffs in this suit against Express Forestry, Inc., Rick Thomas and Sandy Thomas. I have personal knowledge of the facts of this affidavit.

2. My permanent address is: Aldea Santiago Petatan, Municipio Concepcion Huista, Huehuetenango, Guatemala.

3. When I was recruited in Guatemala to come work for the Defendants, I never received any kind of written disclosure explaining what the terms of the job would be.

I don't know of any other worker who received such a disclosure from the Defendants.

4.   I worked for the Defendants as an H2B contract tree planter in 2000, 2001, 2002, 2003, 2004 and 2005.   I worked for the Defendants at many different work sites in different states.   I performed many jobs for the defendants, including tree planting, herbicidal application, cleaning along electrical lines, and picking up trash.   I performed tree planting more than any other task.   While employed by the defendants, I have worked in Louisiana, Mississippi, Arkansas, Tennessee, Texas, Michigan, and Alabama.   I worked for at least eight different crewleaders while employed by the defendants.

5.   I was not properly paid for my work for the Defendants.   The Defendants did not reimburse me for my travel and visa expenses that I was obliged to incur to travel to the United States in order to work for the Defendants. As a result of these expenses which I paid, I did not earn the minimum wage in the first week of work. Each time I traveled to the United States to work for the defendants I paid approximately 16,000 quetzales (approximately 2000 U.S. dollars) in visa, travel and

related costs. I was never reimbursed any of that money by the Defendants.

6. The Defendants did not pay me my full wages when they were due to me. The defendants almost always paid me on a piece rate basis for the work performed. When tree-planting, I was paid by the 1000 trees planted. When spraying with pesticides, I was paid by the acre sprayed. When cleaning around power lines, I was paid by the mile. The only time I recall being paid differently was during brief periods of time that I picked up litter on the highway. During that time, I was paid a set amount per week—approximately $250. However, during all of these times the wages I earned by my production did not reach the prevailing wage that had been promised me under my contract. In addition, I do not recall ever being paid overtime, despite the fact that I consistently worked more than 40 hours per week. Because I was paid solely based on my production—for trees planted and other tasks performed—I did not earn the prevailing wage rate on an hourly basis.

7. I worked with various crews of approximately fifteen (15) with 8 different crewleaders in 7 different states. On all crews, we were required to perform certain

tasks for which we were not compensated at all. For example, we sometimes arrived at the field early and were told to wait. We were not paid for this waiting or any other preparatory time.

8. The check stubs I got with my pay checks were not accurate. The hours listed on those stubs consistently reflected far fewer than the hours I actually worked.

9. I came to the United States from Guatemala with other H2B contract workers imported by the Defendants. We were all required to pay similar sums for travel and visa fees to come to the U.S. to work for the Defendants. No tree planter I have spoken with was ever reimbursed by the Defendants for these costs.

10. I was part of various crews of approximately fifteen H2B tree planters employed by the Defendants. We got paid together and we lived together. I have seen the pay checks for other members of the different crews on which I have worked, and we have discussed them. The other members of my crew were always paid the same way I was and they suffered the same payment problems I have sued for. Many of them have joined this case. I am familiar with the other plaintiffs in this case. All were paid in

substantially the same way that I was paid when working for the defendants. None was reimbursed for his travel and visa costs to come to the United States.

11. The members of my crew worked the same schedule I did and their hours were incorrectly recorded like mine were. The other members of my crew were paid on a piece rate basis, for trees they planted and for other piece-rate tasks. The other members of my crew were also not paid overtime.

12. I have spoken with workers from other crews who worked in other places and in other states for the Defendants. In conversation, they have complained to me about the same payment problems I have sued for in this lawsuit. In the many states and with the many crewleaders with whom I have worked while employed by Express, I have been consistently underpaid. I have not observed any difference in treatment as far as pay is concerned in any state or with any crewleader.

13. I believe that all other H2B contract tree planters who worked for the Defendants were paid the same way I was, and suffered the same payment problems I have sued for in this lawsuit.

14.   In the most recent tree-planting season I worked on a tree-planting crew with Pablo Recinos-Alvarado and Alberto Alvarado, the other named plaintiffs in this action.   We were all underpaid in the same way, and we all have the same kinds of complaints about the way that we were treated by the defendants.

15.   I understand that I have filed this lawsuit as a representative of all of the H2B workers who the Defendant employed.   I have done this because my claims are the same as those experienced by the workers in that class.   I am prepared to represent the interests of all of my fellow workers in this case.

16.   I swear under penalty of perjury under the laws of the United States that the foregoing is true to the best of my memory.


_____
Hugo Martin Recinos-Recinos

Signed the _____ of _____, 2005

## **Translator's Affidavit**

I certify that I am fluent in Spanish and English. I certify that I have reviewed the Spanish and English versions of the attached document, and that the English is a true and accurate translation of the Spanish.

_Gabriela Maxey_
Translator

The foregoing instrument was acknowledged before me this _24th_ day of _June_ , 20 _05_ by _Gabrella Maxey_ .

_Lilie L. Map_
Notary Public

My Commission Expires: _10/16/2005_ .

| | |
|---|---|
| HUGO MARTIN RECINOS-RECINOS, <br> PABLO RECINOS-ALVARADO, and <br> ALBERTO ALVARADO <br> on behalf of themselves and all <br> others similarly situated, <br><br><br> Plaintiffs, <br><br> v. <br><br> EXPRESS FORESTRY, INC., <br> RICK THOMAS, and <br> SANDY THOMAS <br> Defendants. | Case No. 05-1355 |

## DECLARACION DE HUGO MARTIN RECINOS

1.  Mi nombre es Hugo Martín Recinos-Recinos.  Yo soy uno de los Demandantes en este litigio en contra de Express Forestry, Inc., Rick Thomas y Sandy Thomas.  Yo tengo conocimiento personal de los hechos en esta Declaración.

2.  Mi dirección permanente es: Aldea Santiago Petatan, Municipio Concepción Huista, Huehuetenango, Guatemala.

3.  Cuando yo fui contratado en Guatemala para venir a trabajar para los Acusados, yo nunca recibí ninguna clase de información escrita explicando cuales iban a ser los términos del trabajo.  Yo no se de ningún otro trabajador quien haya recibido tal información de los Acusados.

4. Yo trabajé para los Acusados con un contrato de H2B para plantar árboles en 2000, 2001, 2002, 2003, 2004 y 2005. Yo trabajé para los Acusados en muchas localidades en diferentes estados. Yo desempeñé muchos trabajos para los Acusados, incluyendo plantar árboles, fumigar, limpiar alrededor de líneas eléctricas, y recoger basura. Yo desempeñé plantación de árboles más que cualquier otro trabajo. Mientras empleado por los Acusados, yo he trabajado en Louisiana, Mississippi, Arkansas, Tennessee, Texas, Michigan y Alabama. Yo trabajé de menos para ocho mayordomos diferentes mientras estuve empleado por los Acusados.

5. Yo no fui pagado apropiadamente por mi trabajo por los Acusados. Los Acusados no me reembolsaron por mis gastos de viaje y visa que fui obligado a pagar por viajar a los Estados Unidos para poder trabajar para los Acusados. Como resultado de estos gastos que yo pague, yo no gané el sueldo mínimo en la primera semana de trabajo. Cada ves que yo viajé a los Estados Unidos a trabajar para los Acusados yo pagué aproximadamente 16,000 quetzales (aproximadamente 2,000 dólares ) en gastos relacionados con visa y viaje. Yo nunca fui reembolsado por ese dinero por los Acusados.

6. Los Acusados no me pagaron mi sueldo completo cuando debían. Los Acusados casi siempre me pagaban por destajo por el trabajo desempeñado. Cuando plantaba árboles, yo era pagado por cada 1000 árboles plantados. Cuando fumigaba, yo era pagado por cada hectárea fumigada. Cuando limpiaba alrededor de líneas de electricidad, yo era pagado por cada milla. La única ves que recuerdo ser pagado diferente era durante periodos de tiempo breves cuando recogía basura en la carretera. Durante ese tiempo, yo era pagado una cantidad fija por semana, aproximadamente $250.00. Como sea, durante todo este tiempo el sueldo que yo gané por mi producción no llegó al sueldo predominante que me habían prometido bajo mi contrato. Además, yo no recuerdo nunca haber sido pagado por horas extras, a pesar de que yo constantemente trabajé más de 40 horas a la semana. Porque yo solo era pagado basado en producción por los árboles plantados y otros trabajos desempeñados. Yo no gané el sueldo predominante basado en horas trabajadas.

7. Yo trabajé con varias cuadrillas de aproximadamente quince (15) con 8 diferentes mayordomos en 7 diferentes estados. En todas las cuadrillas, nosotros éramos requeridos a desempeñar ciertos trabajos por los cuales no éramos compensados en lo absoluto. Por ejemplo, nosotros algunas veces llegábamos al campo muy temprano y

nos decían que teníamos que esperar. A nosotros no nos pagaban por este tiempo de espera u otro tiempo de preparación.

8. Los talonarios que yo recibí con mis cheques no eran correctos. Las horas anotadas en esos talonarios eran consistentemente más pocas que las horas que actualmente yo trabajaba.

9. Yo vine a los Estados Unidos de Guatemala con otros trabajadores H2B contratados e importados por los Acusados. Todos nosotros éramos requeridos a pagar similares sumas por gastos de viaje y visa para venir a trabajar a los Estados Unidos para los Acusados. Ningún plantador de árboles con los que yo he hablado recibieron un reembolso por estos gastos.

10. Yo fui parte de varias cuadrillas de aproximadamente quince plantadores de árboles H2B empleados por los Acusados. Nos pagaban juntos y vivíamos juntos. Yo he visto los talonarios de otros miembros de diferentes cuadrillas en donde yo he trabajado, y las hemos discutido. Los otros miembros de mi cuadrilla siempre fueron pagados de la misma manera que yo y ellos sufrieron los mismos problemas de pago por los que yo he demandado. Muchos de ellos se han unido a este caso. Todos fueron pagados esencialmente de la misma manera que yo mientras trabajamos

para los Acusados. Ninguno fue reembolsado por gastos de viaje y visa para venir a los Estados Unidos.

11. Los miembros de mi cuadrilla trabajaban el mismo horario que yo y sus horas estaban registradas incorrectamente como eran las mías. Los otros miembros de mi cuadrilla eran pagados por destajo, por árboles plantados y por otros trabajos por destajo. Los otros miembros de mi cuadrilla tampoco les pagaban horas extras.

12. Yo he hablado con trabajadores de otras cuadrillas quienes trabajaban en otros lugares y en otros estados para los Acusados. En conversación, ellos se han quejado conmigo acerca de los mismos problemas de pago por los que yo he demandado en este litigio. En los muchos estados y con las muchas cuadrillas con quien yo he trabajado mientras empleado por Express, yo he sido consistentemente pagado la cantidad incorrecta. Yo no he observado ninguna diferencia en tratamiento en lo que concierne a pago en cualquier estado o con cualquier cuadrilla.

13. Yo creo que todos los otros contratados con H2B plantadores de árboles quienes trabajaron para los Acusados eran pagados de la misma manera que yo era, y sufrieron los mismos problemas de pago por los que yo he demandado en este litigio.

14. En la mas reciente temporada de plantación de árboles, yo trabajé con una cuadrilla de plantadores de árboles con Pablo Recinos-Alvarado y Alberto Alvarado, los otros Demandantes en esta acción. Todos nosotros fuimos pagados la cantidad incorrecta en la misma manera, y todos nosotros tenemos la misma clase de quejas acerca de la manera que fuimos tratados por los Acusados.

15. Yo entiendo que yo he metido esta demanda como un representante de todos los trabajadores de H2B quienes fueron empleados por los Acusados. Yo he hecho esto porque mis quejas son las mismas que esas experimentadas por los trabajadores en esta clase. Yo estoy preparado para representar los intereses de todos mis compañeros trabajadores en esta clase.

16. Yo juro bajo pena de perjurio bajo las leyes de los Estados Unidos que lo establecido es verdad en lo mejor de mi memoria.

_Hugo Martin Recinos R._
Hugo Martin Recinos-Recinos

Firmado el _____de_____, 2005.

Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

NEW ORLEANS DIVISION

| | |
|---|---|
| HUGO MARTIN RECINOS-RECINOS,<br>PABLO RECINOS-ALVARADO, and<br>ALBERTO ALVARADO<br>on behalf of themselves and all<br>others similarly situated,<br><br><br>Plaintiffs,<br><br>v.<br><br>EXPRESS FORESTRY, INC.,<br>RICK THOMAS, and<br>SANDY THOMAS<br>Defendants. | Case No. 05-1355 "I" (3)<br>Judge Lance M. Africk |

## DECLARATION OF MARY BAUER

1.      My name is Mary Bauer. I am one of the attorneys for the plaintiffs in this action.

2.      I am the director of the Immigrant Justice Project of the Southern Poverty Law Center, a non-profit civil rights organization and law firm. I graduated from the University of Virginia School of Law in May 1990 and have been a practicing attorney for fifteen years. I am admitted to practice in the state and federal courts in Virginia. I am a member of the bar of the Fourth and Eleventh Circuits and of the United States Supreme Court.

3.      During the past fifteen years, I have practiced law in a wide variety of fora and in numerous areas of the law. I have tried cases in state and federal court, handling everything from custody matters to complex civil rights matters to employment claims. During the past

seven years, I have focused primarily on cases involving the employment rights of immigrant workers, and have served as lead counsel in numerous federal cases. Prior to my work at the Southern Poverty Law Center, I was the Legal Director for the Virginia Justice Center for Farm and Immigrant Workers, a non-profit legal aid office representing low-wage immigrant workers. I also previously served as the Legal Director of the Virginia ACLU, in which I handled a wide variety of civil rights and civil liberties matters.

4. I have served as lead counsel in numerous cases under the Fair Labor Standards Act and the Migrant and Seasonal Agricultural Worker Protection Act in federal court. In the past seven years, I have represented many hundreds of immigrant workers in wage and other related claims, primarily in federal courts. Some of the cases I have handled include large collective action cases under the Fair Labor Standards Act. *Zamora v. Shores and Ruark Seafood, Inc.,* U.S. District Court for the Eastern District of Virginia C98CV:501; *Maria Demesia Aboyte v. Shores and Ruark Seafood, Inc.,* U.S. District Court for the Eastern District of Virginia; *Alcaraz-Garcia v. Gloucester Seafood, Inc.,* U.S. District Court for the Eastern District of Virginia, 4:00CV69; *Soto-Lopez v. J& W Seafood of Virginia, Inc.,* U.S. District Court for the Eastern District of Virginia; 3:98CV792; *Perez-Sandoval v. International Seafood Distributors, Inc.,* U.S. District Court for the Eastern District of Virginia, 3:99-cv-00691; *Perez-Segura v. Bay Water Seafood, Inc.,* U.S. District Court for the Eastern District of Virginia; *Quiroz Losoya v. Shores And Shores, Inc. t/a Virginia Packing,* U.S. District Court for the Eastern District of Virginia, 99CV133. I have also litigated numerous cases under the Migrant and Seasonal Agricultural Worker Protection Act. One of those cases, *Gregorio Rincon-*

*Castillo v. Osborne*, Western District of Virginia, 7:00CV00246, resulted in a judgment of over $250,000 for the plaintiffs.

5. The Southern Poverty Law Center has sufficient funds available to finance the costs of this litigation.

6. I swear under penalty of perjury that the information in this affidavit is true to the best of my memory, knowledge and belief

Signed this 24th day of June, 2005.

Mary Bauer

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

NEW ORLEANS DIVISION

| | |
|---|---|
| HUGO MARTIN RECINOS-RECINOS, ) <br> PABLO RECINOS-ALVARADO, and ) <br> ALBERTO ALVARADO ) <br> on behalf of themselves and all ) <br> others similarly situated, ) <br> ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> EXPRESS FORESTRY, INC., ) <br> RICK THOMAS, and ) <br> SANDY THOMAS ) <br> Defendants. ) <br> ) | **Case No. 05-1355 "I"(3)** <br> **Judge Lance M. Africk** |

**NOTICE OF HEARING**

PLEASE TAKE NOTICE that plaintiffs, through undersigned counsel, will bring for

hearing their Motion for Class Certification at 9:00 a.m. on Wednesday, August 10, 2005, or as

soon thereafter as counsel may be heard at the United States District Court for the Eastern

District of Louisiana.


Respectfully submitted,

HUGO MARTIN RECINOS-RECINOS, et. al.

- 1 -

By: _____
Mary C. Bauer
*Pro Hac Vice* (VSB #31388)
Andrew H. Turner
*Pro Hac Vice* (VSB #48853)
Counsel for Plaintiffs
Immigrant Justice Project
Southern Poverty Law Center
400 Washington Ave.
Montgomery, AL  36104
Tel: (334)-956-8200
FAX: (334)-956-8481


_____
Hector Linares
Louisiana Bar Number 28857
Juvenile Justice Project of Louisiana
1600 Oretha Castle Haley Blvd.
New Orleans, LA 70113
Tel: (504)-522-5437
Fax: (504)-522-5430

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was sent by overnight mail this 24th day of June 2005:

Walter Passmore, Esq.
Christopher Funk, Esq.
The Passmore Law Firm
P.O. Drawer 3187
McAllen, TX  78502-3187
Tel: (956)-668-8750
Fax: (956)-668-1714

Mark N. Mallery
McGlinchey Stafford, PLLC
643 Magazine Street
New Orleans, LA  70130-3477
Tel:  (504)-596-2736
Fax:  (504)-596-2859


Mary Bauer
Attorney for Plaintiffs

- 3 -